IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LONNIE GANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 2:06-CV-1018 |
| | ) |
| HYUNDAI MOTOR MANUFACTURING | ) |
| LLCL, RUST CONTRUCTORS, INC., *et al*, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT RUST CONSTRUCTORS'
BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Comes now the Defendant, Rust Constructors, Inc. (hereinafter referred to as "Rust") and submits the following brief in support of its Motion for Summary Judgment.

NARRATIVE SUMMARY OF FACTS

On September 24, 2004, Lonnie Gant was employed by American Industrial, Inc. to perform work at the construction site of the Hyundai Motor Manufacturing Plant (referred to as "HMMA") located in Hope Hull, Montgomery County, Alabama. (Complaint, ¶ 9; Attachment # 1/Exhibit A to Notice of Removal, Doc. No. 1). On said date, Lonnie Gant was working underneath the man lift at the Hyundai site when the lift suddenly fell on top of him. (Complaint, ¶ 10). On September 19, 2006 the plaintiff, Lonnie Gant, filed a Complaint in the Circuit Court of Montgomery, Alabama against Rust Constructors alleging: (1) negligent and wanton failure to maintain a safe workplace, (2) negligent and wanton inspection of workplace premises, (3) negligent and wanton failure to warn, and (4) negligent and wanton failure to maintain man lift in a reasonably safe condition. (Complaint).

On September 24, 2004 Rust was no longer doing business in Hope Hull, Montgomery County, Alabama. (Affidavit of Ron Cross). Rust had served as the construction manager overseeing some of the construction of the Hyundai plant up until March of 2004. (Affidavit of Ron Cross). Rust did not award or execute a subcontract on behalf of Hyundai on behalf of American Industrial, Inc. (Affidavit of Ron Cross). The last subcontract bid by Rust for Hyundai was turned over to Hyundai in June of 2004. (Affidavit of Ron Cross). There were no Rust employees on site in Hope Hull, Alabama on September 24, 2004. (Affidavit of Ron Cross).

The accident which is the subject of this action happened within the immediate vicinity of column C8 and column D8 of the general assembly building in the cockpit lift station. (Hyundai Interrogatory Response #1). The owner of the premises where the accident occurred is Hyundai Motor Manufacturing Alabama, LLC located at 700 Hyundai Boulevard, Montgomery, Alabama 36105-9622. (Hyundai Interrogatory Response #2). The name and address of the general contractor for the construction of the Hyundai Plant as of September 24, 2004 was the Eisenmann Corporation (150 East Dartmore Drive, Crystal Lake, Illinois 60014). (Hyundai Interrogatory Response #3). Eisenmann was the contractor for the installation of the assembly line turn key project which included the conveyor system involved in this accident. (Hyundai Interrogatory Response #3). At the time of the accident, both Eisenmann and its subcontractors were responsible for the safety of their employees associated with this project. (Hyundai Interrogatory Response #4). The Hyundai Motor Manufacturing Alabama, LLC Contractors Safety and Fire Protection Handbook (Hyundai Bates Label # HMMA 0583-HMMA 0584), provides as follows:

> "1.3.1   General/Prime Contractor(s) shall be responsible for the safety of their personnel and shall be responsible for compliance with all HMAA, Local, State and Federal

2

> Standards and requirements. General/Prime Contractor(s) must provide a full time onsite construction safety coordinator, on all shifts for their employees and any subcontractors with fewer than 15 employees, that is knowledgeable in safety and how it applies to construction. This knowledge may be demonstrated through experience and education such as:
>
> General/Prime Contractor shall submit a resume for this person to HMMA Safety for approval before the coordinator beginning on site. This safety person and all supervisory personnel must attend all HMMA Safety Classes within the first two weeks of their arrival on site. Additionally, Safety Coordinators must attend these classes quarterly as a review. Contractors shall not release the Site Safety Specialist without prior approval of HMMA Safety.
>
> 4 Subcontractors
> 1.4.1 Subcontractors shall be responsible for the safety of their personnel and compliance with all HMMA, Local, State, and Federal laws and regulations, including, but not limited to the Occupational Safety and Health Act, Subcontractor(s) must provide a competent On-Site, Full Time Safety Coordinator, when their estimated manpower count is to reach 15 or more, who shall be responsible for compliance with HMMA Site Safety Rules and Regulations. This person shall be knowledgeable in 29 CFR 1926 and those parts of 29 CFR 1910 that are applicable to construction. Having this person in no way absolves a foreman or supervisor of responsibility in planning his/her work safely and the enforcement of all safety rules on the project. General Contractor(s) shall have the responsibility of approving competent subcontractor safety personnel."

The man lift, which was involved in this accident, was leased from Nations Rent by Eisenmann or American Industrial Contractors, LLC. (Hyundai Interrogatory Response #8). At the present date the manufacturer is unknown. (Hyundai Interrogatory Response #5). It is unknown who specifically was with the plaintiff at the time the accident occurred. However, it is undisputed that no employee of Rust was present, and in fact, there were no Rust employees on

3

site at the time of the accident. (Affidavit of Ron Cross). After the accident HMMA's Contract Security Vendor, Don Terry & Associates (hereinafter "DTA") and Eisenmann performed an investigation. (Hyundai Interrogatory Response #9). OSHA did not perform an investigation in this accident. (Hyundai Interrogatory Response #10). Rust did not investigate the accident because Rust had ceased doing business in Hope Hull, Alabama as of September 24, 2004. (Affidavit of Ron Cross).

## ARGUMENT

A. Negligence

In order to prevail on a negligence claim under Alabama law, it is well-settled that a plaintiff must establish each of the following four elements: 1) the existence of a duty on the part of the defendant owed to plaintiff; 2) the defendant's breach of that duty; 3) the existence of a causal relationship between the defendant's breach and the plaintiffs injuries; and 4) resulting injury to the plaintiff. *Clark v. Floyd*, 514 So.2d 1309, 1314 (Ala. 1987); *Jones v. Newton*, 454 So.2d 1345, 1348 (Ala. 1984); *Alabama Power Co. v. Beam*, 472 So. 2d 619, 627 (Ala. 1985). Because the plaintiff's claims against Rust are based upon Rust's alleged negligence, Rust is entitled to judgment as a matter of law on the plaintiff's claims if it demonstrates the absence of a genuine issue of material fact as to any one of these four essential elements.

    1.    *The duty to provide a safe work place.*

The first issue is whether Rust, who was no longer on-site, owed a legal duty to Lonnie Gant, as an employee of an independent contractor, to provide a safe working environment. Alabama Code Section 25-1-1(a) (1975) imposes a statutory duty upon all employers to provide a safe workplace. Employer is defined as every person or entity "having control or custody of any employment, place of employment or of any employee…" ALA. CODE § 25-1-(c) (1975). Even

though the Alabama Supreme Court has previously characterized a general contractors' relationship with its subcontractor as one of master and servant, they "have consistently maintained that the critical issue is whether the defendant has retained possession and control over the premises." *Stovall v. Universal Construction Co.*, 893 So. 2d 1090 (2004). When the Defendant owns the premises, possession is undisputed and the sole issue becomes whether the Defendant reserved the right to control the manner in which the work was performed. *Stovall* at 1098. Where either possession or control is missing, the Alabama Supreme Court has refused to find the defendant liable. *Id. See also, Procter and Gamble Co., v. Staples*, 551 So. 2d 949, 953 (Ala. 1989); *Barron v. Construction One*, 514 So. 2d 1351, 1353 (Ala.1987); *Elder v. EI DuPont De Nemours & Co.,* 479 So.2d 1242, 1248 (Ala.1985); *Pate v. United States Steel Corp.,* 393 So.2d 992, 994 (Ala.1981).

Alabama courts examine two areas of evidence to determine whether a premises owner controls the work performed by an independent contractor: the terms of the contract between the parties and the conduct of the premises owner. *Pugh v. Butler Telephone Co., Inc.*, 512 So.2d 1317 (Ala.1987). Although Rust is not a premises owner, the court should use the same analysis to determine if the reservation of control was retained in this case. Therefore, to overcome summary judgment, the plaintiff must raise genuine issues of material fact by offering "any evidence tending to establish that [Rust] retained this control, either by contract or by its actions…" *Weeks v. Alabama Elec. Co-Op., Inc*., 419 So.2d 1381, 1383 (Ala.1982). For the following reasons the plaintiff can not do so.

A careful review of the contract between Eisenmann and Hyundai finds that its terms unambiguously establish that Eisenmann agreed that it would be responsible for the safety of the employees of its subcontractors, such as the plaintiff, Lonnie Gant. It also provides that

Eisenmann shall be responsible for the safety of their personnel and shall be responsible for compliance with all HMAA, Local, State and Federal Standards and requirements. Furthermore all subcontractors (American Industrial, Inc.) shall be responsible for the safety of their personnel and compliance with all HMMA, Local, State, and Federal laws and regulations, including, but not limited to the Occupational Safety and Health Act. Subcontractor(s) must provide a competent On-Site, Full Time Safety Coordinator, when their estimated manpower count is to reach 15 or more, who shall be responsible for compliance with HMMA Site Safety Rules and Regulations.

These instructions are a clear inference Eisenmann and its subcontractors had complete control over how they performed their work. This reservation of control empowered Eisenmann to hire a subcontractor, American Industrial, Inc., to perform work at the construction site. As such, Rust did not control the manner in which Eisenmann or its subcontractors accomplished its work.

Second, not only are the terms of the contract indicative as to the relationship between Rust and the plaintiff, but Rust did not breach any legal duty owed to the Plaintiff because it did not reserve the right to control any aspect of the work. Rust did not participate, supervise, instruct, or otherwise have any involvement in work the plaintiff, Mr. Gant was performing. Rust only served as the construction manager overseeing some of the construction of the Hyundai plant up until March of 2004. Rust did not award or execute a subcontract on behalf of Hyundai on behalf of American Industrial, Inc. The last subcontract bid by Rust for Hyundai was turned over to Hyundai in June of 2004. In fact, there were no Rust employees on site in Hope Hull, Alabama on September 24, 2004.

Therefore, Rust is entitled to judgment as a matter of law on the Plaintiff's claim of failure to provide a safe workplace.

    2.    *The duty to properly inspect/certify the premises.*

The Plaintiff also claims that Rust is liable for the alleged negligent inspection of the premises. The Plaintiff alleges that Rust undertook a duty to inspect the entire project site and that it performed its duty negligently, yielding the unsafe environment that caused Lonnie Gant's injury. Rust did not participate, supervise, instruct, or otherwise have any involvement in work the plaintiff, Mr. Gant was performing. Rust only served as the construction manager overseeing some of the construction of the Hyundai plant up until March of 2004. Rust did not award or execute a subcontract on behalf of Hyundai on behalf of American Industrial, Inc. The last subcontract bid by Rust for Hyundai was turned over to Hyundai in June of 2004. In fact, there were no Rust employees on site in Hope Hull, Alabama on September 24, 2004.

There is no evidence that Rust undertook such tasks. As a result, Defendant Rust is entitled to summary judgment on this claim.

    3.    *The duty to warn.*

The plaintiffs' allege that Rust breached a duty to the Plaintiffs by failing to warn the plaintiff, Lonnie Gant, of an unreasonably dangerous or unforeseen hazardous condition. Rust did not breach any legal duty owed to the Plaintiff. First, Rust did not participate, supervise, instruct, or otherwise have any involvement in the work that was being done at the time of the accident. American Industrial was solely responsible for the work it was doing through its subcontract with Eisenmann. Rust did not award or execute a subcontract on behalf of Hyundai on behalf of American Industrial, Inc. The last subcontract bid by Rust for Hyundai was turned over to Hyundai in June of 2004. In fact, there were no Rust employees on site in Hope Hull, Alabama

Alabama on September 24, 2004.

Second, and without waiving the above-mentioned argument, even if Rust did control some manner of the work being accomplished, Rust would have no duty to warn the plaintiff that work being accomplished was dangerous. It is well-settled that the duty to warn of hidden dangers is "discharged if those in charge of the work for the independent contractor are given warning or have knowledge of the danger." *Armstrong v. Georgia Marble Co.*, 575 So.2d 1051, 1053 (Ala.1991); *Fielder v. USX Corp.*, 726 So.2d 647 (Ala.1998).

Third, before Lonnie Gant's accident, Rust had no notice of any problems with any of the work being performed by American Industrial at the Hyundai premises. Rust did not participate, supervise, instruct, or otherwise have any involvement in the work that was being done at the time of the accident. American Industrial was solely responsible for the work it was doing through its subcontract with Eisenmann. (See Affidavit of Ron Cross). Rust did not award or execute a subcontract on behalf of Hyundai on behalf of American Industrial, Inc. The last subcontract bid by Rust for Hyundai was turned over to Hyundai in June of 2004. In fact, there were no Rust employees on site in Hope Hull, Alabama on September 24, 2004. Rust breached no duty to the Plaintiff in part because they had no notice of a problem. As such, Rusk is entitled to summary judgment on this claim.

    *4.    The duty to institute adequate safety standards or rules*

The plaintiffs' allege that Rust breached a duty to the Plaintiffs by failing to implement adequate safety rules. A careful review of the contract between Eisenmann and Hyundai finds that its terms unambiguously establish that Eisenmann audits subcontractors agreed they would be responsible for the safety of their employees, such as the plaintiff, Lonnie Gant. It also provides that Eisenmann shall be responsible for the safety of their personnel and shall be

responsible for compliance with all HMAA, Local, State and Federal Standards and requirements. Furthermore all subcontractors (American Industrial, Inc.) shall be responsible for the safety of their personnel and compliance with all HMMA, Local, State, and Federal laws and regulations, including, but not limited to the Occupational Safety and Health Act. Subcontractor(s) must also provide a competent On-Site, Full Time Safety Coordinator, when their estimated manpower count is to reach 15 or more, who shall be responsible for compliance with HMMA Site Safety Rules and Regulations. These instructions are a clear inference Eisenmann and its subcontractors had complete control over how they performed their work. This reservation of control empowered Eisenmann to hire a subcontractor, American Industrial, Inc., to perform work. As such, Rust had no duty to institute adequate safety standards or rules.

     Rust did not breach any legal duty owed to the Plaintiff. The plaintiff can point to no evidence indicating that Rust failed to institute a required safety standard. No evidence exists to contradict the contract language between Hyundai and Eisenmann. Rust did not participate, supervise, instruct, or otherwise have any involvement in the work that was being done at the time of the accident. American Industrial was solely responsible for the work it was doing through its subcontract with Eisenmann. Rust only served as the construction manager overseeing some of the construction of the Hyundai plant up until March of 2004. Rust did not award or execute a subcontract on behalf of Hyundai on behalf of American Industrial, Inc. The last subcontract bid by Rust for Hyundai was turned over to Hyundai in June of 2004. In fact, there were no Rust employees on site in Hope Hull, Alabama on September 24, 2004. Therefore, Rust is entitled to judgment as a matter of law on the Plaintiffs' claim of failure to institute adequate safety standards and rules.

     4.    *The duty to adequately maintain the lift.*

The Plaintiff alleges that Rust breached the duty owed to the Plaintiff to adequately maintain the man lift. Rust breached no legal duty owed to the Plaintiff. Rust did not rent, control, or maintain the man lift which fell on Plaintiff. Pursuant to the Interrogatory Answers of Hyundai, the man lift was leased from NationsRent by Eisenmann or American Industrial Contractors, LLC. Even so, the undisputed evidence clearly shows that the maintenance of the man lift is not in issue. As such, Rust is entitled to a summary judgment on this claim.

B. Wantoness

Wantonness is the conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty, an injury will likely or probably result. *Hamme v. CSX Transportation, Inc.*, 621 So.2d 281 (Ala. 1993). Before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he either consciously and intentionally did some wrongful act, or consciously omitted some known duty which produced the injury. *Hamme*, 621 So.2d at 281. Because the Plaintiff cannot offer any evidence that Rust participated in, supervised, instructed, or otherwise had any involvement in the work being performed, Rust is entitled to summary judgment on the Plaintiff's wantonness claim.

WHEREFORE, Defendant Rust Constructors, Inc. requests the Court to enter a summary judgment on all counts of the Complaint.

/s/ C. Winston Sheehan, Jr.
C. WINSTON SHEEHAN, JR.
Attorney for Defendant, Rust Constructors, Inc.

OF COUNSEL:
BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Alabama  36102-2148
Phone:  (334) 387-7680
Fax:     (334) 387-3222

## CERTIFICATE OF SERVICE

      I hereby certify that on February 21, 2007, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following registered persons and that those persons not registered with the CM/ECF system were served by U.S. mail:

Parker C. Johnston, Esq.
Attorney at Law, L.L.C.
3090 Alabama Hwy. 14
P. O. Box 1207
Millbrook, AL  36054

Bethany Rolger, Esq.
Robert Ward, Esq.
Rushton, Stakely, Johnston & Garrett, P.A.
P. O. Box 270
Montgomery , AL 36101-0270

                                                   /s/ C. Winston Sheehan, Jr.
                                                   OF COUNSEL